# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**XYMOGEN, INC.,**

    **Plaintiff,**

**v.**                                                     Case No:    6:17-cv-869-Orl-31KRS

**DIGITALEV, LLC,**

    **Defendant.**

## ORDER

This Matter comes before the Court on the Defendant's Motion to Dismiss (Doc. 17), the Plaintiff's Response (Doc. 23), and the Defendant's Reply (Doc. 31).

**I.**     **Factual and Procedural Background**

The Plaintiff, Xymogen, manufactures and sells nutritional supplements to licensed healthcare practitioners and their patients. The Plaintiff's mark, Xymogen®, is a registered trademark. The Defendant allegedly maintains a fully interactive website, www.purethera.com, through which the Defendant advertises and sells nutritional supplement products. The Defendant purchased Google ads through the Google AdWords program, and submitted the word "Xymogen" in connection with those ad purchases. As a result, if Google users search for "Xymogen," a sponsored link will appear either above or to the right of the list of search results, directing them to the Defendant's website. The Plaintiff has also purchased advertising connected to the word "Xymogen" through AdWords. Additionally, the Plaintiff alleges that, in an effort to mislead consumers, the Defendant "substantially copied labels from Xymogen products and placed the labels on Pure Therapeutics products," which are sold by the Defendant. Amend. Compl. ¶ 28.

The Plaintiff filed the Amended Complaint (Doc. 15) on September 13, 2017, alleging False Designation of Origin under 15 U.S.C. § 1125(a) (Count I); common law trademark infringement (Count II); common law unfair competition (Count III); and violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV). The Plaintiff also seeks injunctive relief (Count V). On September 27, 2017, the Defendant filed the Motion to Dismiss (Doc. 17). The Plaintiff filed its Response (Doc. 23) on October 27, 2017, and the Defendant filed its Reply (Doc. 31) on November 14, 2017.

## II. Legal Standards

### A. Motion to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th

Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### B. Personal Jurisdiction

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute). When a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; *see also Polski Linie Oceaniczne*, 795 F.2d at 972. When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, a court must construe all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The Court considers two questions in resolving whether personal jurisdiction exists. "First, [courts consider] whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). "Second, [courts] examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

*Id.* The Due Process Clause "requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Specific jurisdiction is based on a defendant's activities in the forum that are related to or arise out of the cause of action alleged in the complaint. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). The exercise of specific jurisdiction comports with due process if the defendant has certain "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted); *see also, e.g.*, *Fraser v. Smith*, 594 F.3d 842, 845 (11th Cir. 2010). In assessing these contacts, a court must determine whether the defendant purposefully availed itself of the privilege of conducting activities in Florida—or purposefully established contacts in Florida—and whether there is a sufficient nexus between those contacts and the litigation. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010). Further, in the case of tortious conduct, if the court determines that conduct is "intentionally and purposefully directed at a resident of the forum," the minimum contacts standard is met and a defendant can reasonably expect to be haled into court in the forum. *Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) (quoting *New Lenox Industries v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007)).

### III. Analysis

### A. Personal Jurisdiction

#### 1. Long-Arm Statute

The Defendant incorrectly asserts that the Plaintiff "makes no allegations that would invoke personal jurisdiction under any of the provisions of subsection 48.193(1)(a)." Mot. at 5. The Plaintiff has made such an allegation, because trademark infringement claim qualifies as a tortious act for purposes of the Florida long-arm statute. *See Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1271 (M.D. Fla. 2015) (citing *Licciardello*, 544 F.3d at 1283). Further, courts applying Florida law have broadly interpreted the long-arm statute with regard to tortious conduct to include conduct outside the state that causes injury within the state. *See, e.g., Licciardello*, 544 F.3d at 1283; *Horizon Aggressive Growth v. Rothstein-Kass*, 421 F.3d 1162, 1168 (11th Cir. 2005) ("[J]urisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida."); *Posner*, 178 F.3d at 1220 (permitting personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida). Moreover, as long as a website is accessible in Florida, it has been held that trademark infringement on the website occurs in Florida if the victim company is headquartered here. *See Licciardello*, 544 F.3d at 1283. The Defendant submitted an affidavit, but the affidavit contained no information that would shift the burden to the Plaintiff for purposes of specific personal jurisdiction under § 48.193(1)(a)(2). Taking the Plaintiff's allegations as true, as the Court must, the Defendant has committed a tortious act within the state of Florida for purposes of the long-arm statute. Therefore, jurisdiction is proper under § 48.193(1)(a)(2).

### 2. Minimum Contacts

The Eleventh Circuit has adopted a three-part test to determine whether a non-resident defendant possesses sufficient minimum contacts with a forum state so as to justify the exercise of personal jurisdiction. The court must determine (1) whether the defendant purposefully availed itself of the forum state; (2) whether the cause of action arises out of the activities of which the defendant purposefully availed itself; and (3) whether the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. *Future Technology Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000). In some circumstances, even a single act can meet the constitutional jurisdiction requirements. The Eleventh Circuit has held that intentional torts are such acts that "may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello*, 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Tort actions are different from contract actions and are subjected to a different constitutional analysis. *Licciardello*, 544 F.3d at 1286. The *Calder* test is used to satisfy due process requirements in a tort case. To satisfy that test, a tort must be (1) intentional; (2) aimed at the forum state; and (3) cause harm that the defendant should have anticipated would be suffered in the forum state. *Id*. The *Calder* test is the appropriate constitutional analysis here.

The Plaintiff has alleged that the tortious actions of the Defendant were intentional, and thus, the first element of *Calder* is met. Next, based on the allegations in the Amended Complaint, the Defendant willfully purchased the "Xymogen" AdWords advertising in order to trade on the Plaintiff's reputation. Accordingly, the Defendant's actions were aimed at the forum state, where the Plaintiff is located, satisfying the second element of *Calder*. The Plaintiff further pleads that the Defendant knowingly caused the Plaintiff harm. Accordingly, based on the Plaintiff's

allegations, the third element of *Calder* is likewise met: the Defendant caused harm that it should have anticipated would be suffered in the forum state. Taking the Plaintiff's allegations as true, the Court finds that the Defendant has minimum contacts with this forum and that it could reasonably expect to be haled into court here with respect to the tortious actions described in the Amended Complaint.

**B. Venue**

The Defendant also moves for dismissal based on improper venue. Under 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Both the websites where the Defendant sold its products and the website on which it purchased the AdWords advertising are accessible in Florida, so the trademark infringement on those websites occurs in Florida, because the victim company is headquartered here. *See Licciardello*, 544 at 1283 (11th Cir. 2008). Accordingly, because trademark infringement is deemed to take place in the location where the owner of the trademark resides, venue is proper here. *See Nida Corp. v. Nid*a, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000).

**C. Failure to State a Claim**

The Defendant argues that, because the "Plaintiff has failed to allege *any* conduct by Digitalev that states a cause of action under any legal theory, all claims should be dismissed." Mot. at 12-13. However, the Defendant appears to take issue with only one element of the Plaintiff's trademark infringement claims,[1] arguing that the Plaintiff has failed to plausibly plead that the Defendant's use of "Xymogen" as a keyword in Google AdWords was likely to cause

---

[1] The Defendant also argues that the Plaintiff has failed to state a claim with respect to its allegations that the Defendant copied its product labels, but those are allegations, not claims, and the Court does not dismiss mere allegations.

confusion among consumers. There are seven factors that courts look to "when determining whether a likelihood of confusion exists:"

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008) (quoting *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (internal quotation marks omitted). Although of course, at this stage, the Plaintiff need not actually *show* that there was in fact a likelihood of consumer confusion, these factors can nonetheless inform the analysis here. The Plaintiff alleges that the Defendant's products are very similar to the Xymogen products; indeed, it is stated that the ingredients and labels are nearly identical. The Plaintiff states that the AdWords links "do not always clearly identify themselves as advertisements, and Google's layout of the ads does not conspicuously identify them as such." Amend. Compl. ¶ 23. Additionally, according to the Amended Complaint, "Xymogen" is an often-search term on the internet. The Plaintiff alleges that it is the Defendant's intent to confuse and mislead the consumers who search for "Xymogen." Both the Plaintiff and the Defendant used the same AdWords advertising program for the keyword "Xymogen." Amend. Compl. ¶ 25, 27. Both the Plaintiff and the Defendant sell nutritional supplements over the internet. The Plaintiff's allegations are more than enough to raise its right to relief above the speculative level, and the Plaintiff has plausibly pled a likelihood of consumer confusion.

## IV. Conclusion

In consideration of the foregoing, it is hereby **ORDERED** that the Defendant's Motion to Dismiss (Doc. 17) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 1, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party